UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **GILLIAN CARUSONE,** *on behalf of herself and all others similarly situated*, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 5:19-cv-01183-LCB |
| **NINTENDO OF AMERICA, INC.,** | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gillian Carusone filed this putative class action against Defendant Nintendo of America, Inc. ("Nintendo") on behalf of herself and all similarly situated individuals—Alabama residents who purchased a Nintendo Switch console or Joy-Con controllers—for an alleged controller defect known as "drifting." (Doc. 1 at 1, 12). Before the Court is Defendant's Motion to Compel Arbitration and Dismiss (Doc. 17). For the reasons stated below, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

### I.  BACKGROUND

On July 21, 2017, Plaintiff, an Alabama resident, purchased a Nintendo Switch video-game console ("Switch") at a Best Buy in Huntsville, Alabama for $299.99. (Doc. 20 at 1). About twenty-two months after her purchase, Plaintiff

1

noticed a problem that began to interfere with her gameplay. (Doc. 1 at 4). The left joystick of her controllers, known as Joy-Cons, which are used to direct gameplay on the console and come included with her Switch package, began to "drift." (*Id*.). When a controller "drifts," it registers movement in gameplay without a player's manual control. (*Id*.). Because the drifting interfered with her use of the Switch, Plaintiff purchased a new set of Joy-Cons for $69.00 on July 4, 2019. (*Id*.). Other Joy-Con users reported similar problems with drifting Joy-Cons. (*Id*. at 7–10).

All new Switches, when first powered on, require the purchaser to accept the terms of an "End-User License Agreement" ("EULA"). (Doc. 18 at 2). Through a series of screens, the purchaser is asked to select a language and region, and then to accept the terms of the EULA. (*Id*.). This latter screen is entitled "End-User License Agreement," and it displays a short message: "By selecting the Accept button, you acknowledge that you have read and agree to be bound by the End-User License Agreement. If you do not agree, stop using this system." (*Id*.). Beneath the message is a hyperlinked button, rendered in a box of bright and pulsating blue, that reads "View End-User License Agreement" and provides the purchaser with instant access to the full EULA. (*Id*. at 3). And beneath this button is the word "Accept" and a small white box. (*Id*.). The purchaser cannot advance to the next screen without clicking "Accept." (*Id*.). Only by selecting this button and accepting the EULA can

the purchaser proceed, activating a grayed-out "Next" button and transitioning to the next screen. (*Id.*).

The EULA contains a provision for mandatory individual arbitration and a class-action waiver, a provision that the purchaser may choose to opt out of. (*Id.* at 7–8). Purchasers are advised of the provision and the opt-out election in the EULA's preamble, which states that the EULA

> CONTAINS A BINDING ARBITRATION AND CLASS ACTION WAIVER PROVISION IN SECTION 7 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT AND WITH RESPECT TO ANY 'CLAIM' . . . BETWEEN YOU AND NINTENDO. YOU HAVE THE RIGHT TO OPT OUT OF THE PROVISION AS DESCRIBED IN SECTION 7.

(*Id.* at 6). Section 7 contains the arbitration and class-action-waiver provision. (*Id.* at 7–8). It provides that "[a]ny matter" that Defendant and a customer "are unable to resolve" and "all disputes or claims arising out of or relating to" the EULA, "including its formation, enforceability, performance, or breach . . . shall be finally settled by binding arbitration." (*Id.* at 7). The same section informs the purchaser that "[t]he parties understand that, absent this mandatory provision, they would have the right to sue in court and have a jury trial." (*Id.*). It also requires individualized arbitration: "arbitration shall be conducted by the parties in their individual capacities only and not as a class action or other representative action, and the parties waive their right to file a class action or seek relief on a class basis." (*Id.*).

If a purchaser does not wish to accept the EULA, she can either return the system or "opt out of the arbitration provision by providing written notice to [Defendant] within 30 days of purchase." (*Id*. at 8). Plaintiff does not dispute that she clicked the "Accept" button on the End-User License Agreement screen to complete the post-purchase account-creation process before using the Switch. (Doc. 19 at 12). Nor does she allege any attempt to exercise either opt-out option.

On July 24, 2019, Plaintiff brought suit against Defendant on behalf of herself and prospective class members who experienced similar drift issues with their controllers. (Doc. 1). She asserts six counts against Defendant, including violations of federal and state law, for the faulty Joy-Cons. (*See id*. at 11). Defendant contends that Plaintiff has waived her right to file this lawsuit by agreeing to resolve her claim individually through arbitration, and Defendant now moves to dismiss or, in the alternative, stay the action and compel arbitration (Doc. 17 at 2).

## II.   LEGAL STANDARDS

### A. The FAA

"The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. ("FAA") is 'a congressional declaration of a liberal federal policy favoring arbitration agreements." *Scurtu v. Int'l Student Exchange*, 523 F. Supp. 2d 1313, 1318 (S.D. Ala. 2007) (citing *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002)); *see also Bazemore v. Jefferson Capital Sys. LLC*, 827 F.3d 1325, 1333 (11th

Cir. 2016) (noting that the Eleventh Circuit recognizes a "presumption of arbitrability" under the FAA). However, this liberal "policy only extends insofar as an agreement actually exists: 'whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination.'" *Williams v. Gen. Elec.*, 13 F. Supp. 3d 1176, 1180 (N.D. Ala. 2014) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). Accordingly, courts must not presume parties are bound to arbitration "unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal citations omitted)).

## B. Motion to compel arbitration

When considering a motion to compel arbitration, courts may decide the motion as a matter of law by using a "summary judgment-like standard" where "there is no genuine dispute as to any material fact."[1] *Bazemore*, 827 F.3d at 1333.

---

[1] As grounds for the motion to compel arbitration, Defendant cites Rule 12(b)(1) of the Federal Rules of Civil Procedure and 9 U.S.C. § 4. Although motions to compel arbitration have been treated by some courts in this circuit as challenges to the court's subject-matter jurisdiction under Rule 12(b)(1), *see, e.g., Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013), the authority for the motion comes directly from Federal Arbitration Act itself, *see* 9 U.S.C. § 4; *see also Stepp v. NCR Corp.*, 494 F. Supp. 2d 826, 828 (S.D. Ohio 2007) (noting that motions to compel arbitration are defined by the FAA and lie outside the ambit of Rule 12(b)) The facts are analyzed under a summary judgment-like standard, *Bazemore,* 827 F.3d at 1333. Other courts have thus held that the better practice would be to analyze a motion to compel arbitration under Rule 12(b)(6) or Rule 56. *See City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017) (holding that an arbitration agreement standing alone cannot divest district courts of subject-matter jurisdiction and that motions to compel should be analyzed under Rules 12(b)(6) and 56). Since Defendant by moving for the order under the § 4 of the FAA has invoked the proper authority, the Court need not decide whether the motion could be brought instead under Rule 12(b)(6) or Rule 56.

A dispute is not genuine if it is not supported by the evidence "or is created by evidence that is 'merely colorable' or not significantly probative." *Id*.

When evaluating a motion to compel arbitration, courts must "consider: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement." *Scurtu*, 523 F. Supp. 2d at 1318. The validity of an arbitration agreement is a matter of state law. *Id*. (citing *Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1368 (11th Cir. 2005)). In Alabama, the court applies "general state-law contract principles" to determine whether a valid arbitration agreement exists. *Ryan's Family Steakhouse*, *Inc*., *v. Kilpatric*, 966 So. 2d 273, 279 (Ala. Civ. App. 2006) (citing *Capitol Chevrolet & Imports*, *Inc. v. Payne*, 876 So. 2d. 1106, 1109 (Ala. 2003). Under Alabama law, a contract is formed when there is acceptance of an offer, consideration, and mutual assent to its essential terms. *Freed v. Cobb*, 845 So. 2d 807, 809 (Ala. Civ. App. 2002) (citing *Hargrove v. Tree of Life Christian Day Care Ctr*., 699 So. 2d 1242, 1247 (Ala. 1997)).

Granting a motion stay when a party moves to compel arbitration is the proper remedy in this case. *See* 9 U.S.C. § 3 ("[T]he court…upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.") While other courts have held there is discretion to dismiss a case when all claims are

arbitrable, dismissal is inappropriate. *See Schultz v. Epic Sys. Corp.*, 376 F. Supp. 3d 927, 939 (W.D. Wis. 2019) (quoting *Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011)). In light of plain language of 9 U.S.C. § 3, the Court must stay the case and compel the parties to arbitrate. *See Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004) (holding the district court was bound to stay the case and compel arbitration because of the clear mandate of 9 U.S.C. § 3). However, Defendant can raise its motion to dismiss again in arbitration.

## III.  DISCUSSION

The only issue to be decided is whether there is a valid arbitration agreement; whether Plaintiff's claims fall within the scope of the agreement is not in dispute. Defendant argues that by signing the EULA and failing to opt out of the EULA's arbitration provision, Plaintiff thereby agreed to arbitration. (Doc. 22 at 6–7). Plaintiff raises four objections to the agreement's validity: (1) that the arbitration agreement is invalid because it lacked mutual assent; (2) that the arbitration agreement is invalid because it lacked consideration; (3) that the Switch could not be returned as described in the EULA; and (4) that internal inconsistencies render the contract unenforceable. The Court will address each of these arguments in turn.

### A. Mutual Assent

Mutual assent exists between the parties. Plaintiff offers several reasons why her acceptance of the EULA failed to demonstrate that mutual assent existed, even

though she accepted the agreement. The arbitration agreement unambiguously shows mutual assent to the essential terms of the EULA. Mutual assent to a contract is typically manifested by signature; but it may also be manifested by ratification. *Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327, 1343 (M.D. Ala. 2014) (citing *Baptist Health Sys., Inc. v. Mack*, 860 So. 2d 1265, 1273 (Ala. 2003)).

Plaintiff ratified the EULA—and thus the arbitration provision—when she clicked the EULA's "Accept" button. Although there is no direct evidence to prove Plaintiff's assent to the EULA, Plaintiff admits that she clicked this button to create her user account. (Doc. 19 at 12). Further, according to Defendant's affidavits, a new Switch cannot be used unless a purchaser clicks "Accept" and selects the "Next" button to advance to the next screen and, eventually, begin gameplay. (Doc. 18 at 3). Even if Plaintiff had not clicked that she accepted the EULA, her continued use of the Switch signaled ratification of the agreement. *See Lyles v. Pioneer Hous. Sys., Inc.*, 858 So. 2d 226, 229 (Ala. 2003) (A party's assent to a contract can be manifested when she accepts the benefits of a contract.)

Plaintiff's objections that she could not manifest unambiguous assent to the contract's validity are unavailing. Her acceptance of the EULA was enough. But Plaintiff nevertheless contends, in short, that by requiring her assent to the EULA only after she'd purchased and opened the package, Defendant made contract creation impossible. Plaintiff thus asserts that Defendant misled her into believing

she had no ability to reject the EULA; that the post-purchase presentation of the agreement dissuades purchasers from reading it; and that conditioning usability on assent to the EULA, presented post-purchase, deprived her of any meaningful opportunity to withhold her consent. (Doc. 19 at 12–16).

This argument is based on the false premise that the EULA was unavailable to consumers before purchase. The terms of the EULA are available for pre-purchase review, and they were available to Plaintiff—had she chosen to read them—on July 21, 2017.[2] (*See* Doc. 23 at 1). Moreover, and more importantly, Plaintiff's argument is irrelevant. Plaintiff does not dispute that "clickwrap" agreements—agreements that require a user to click a box to continue a transaction—can create a valid contract. (Doc. 19 at 12); *see Bazemore*, 827 F.3d 1327. Plaintiff accepted the EULA and continued to use her Switch. Therefore, she manifested the requisite assent to the essential terms of the contract, including the arbitration provision. Plaintiff provided no evidence that she sent written notice to Defendant that she chose to opt out of the arbitration agreement, and on Defendant's part there is no record that Plaintiff exercised this option. (*See* Doc. 18 at 4). Accordingly, Plaintiff's argument

---

[2] In November 2019, two years after she purchased the Switch and five months after this action was filed, Plaintiff tried unsuccessfully to view the EULA online. (Doc. 20 at 3). According to Defendant, the website was then being updated. (Doc. 23 at 1). Plaintiff makes no claim about the online availability of the EULA at the time that she purchased her Switch, at which time Defendant avers the webpage properly displayed the agreement. (Doc. 23 at 1).

that she did not manifest unambiguous consent to the arbitration agreement is meritless.

### B. Consideration

The arbitration agreement is supported by consideration. Under Alabama law, consideration for a contract exists when "there [is] an act, a forbearance, a detriment, or destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." *Kelsoe v. Int'l Wood Prod., Inc.*, 588 So. 2d 877, 878 (Ala. 1991). Consideration for an agreement to arbitrate exists when both parties promise to resolve claims through arbitration rather than another judicial process. *See Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279, 1284 (N.D. Ala. 2000) ("No consideration above and beyond the agreement to be bound by [arbitration] was necessary to validate the contract.")

Plaintiff argues that there is no consideration for the agreement because Defendant "refused to give purchasers what they paid for [usable Joy-Cons] until they made additional concessions [signing the EULA] that were not part of the original bargain and were not referenced prior to or during the sale." (*Id.* at 17). However, this argument ignores Defendant's obligation to be bound by the results of arbitration. The language of the EULA provides that Defendant agreed to arbitrate Plaintiff's individual claims. (*See* Doc. 18 at 7). Because Defendant agreed to forfeit

its right to litigate issues with Plaintiff in court, the arbitration agreement is supported by adequate consideration. *Wright*, 82 F. Supp. 2d at 1284.

### C. Plaintiff's Ability to Return the Switch

Plaintiff quarrels over Defendant's characterization of the Switch return policy concerning arbitration. (Doc. 19 at 18). Defendant claims that one way users could avoid agreeing to the arbitration provision was returning the Switch to the store for a full refund. (Doc. 18 at 3). Plaintiff disputes that she could have returned the Switch and received a refund of the money she paid for the product. (Doc. 19 at 18). To support her position, Plaintiff includes the return policies of retailers like Target, which provides "[o]pen music, movies, video games and software cannot be returned, but may be exchanged at the store for the same title, for the same or different gaming platform." (*Id*. at 7).

Plaintiff's contention that she could not have exercised the right to opt out of arbitration by returning her Switch is meritless. First, Plaintiff's argument is merely speculative: never did she try to exercise the right. Second, the EULA expressly created two ways to avoid being bound by the arbitration clause, and though Plaintiff quibbles with the first option—returning the console—she overlooks the second. Under the EULA, Plaintiff had thirty days to send Defendant written notice that she would like to opt out of arbitration. (Doc. 18 at 8). Plaintiff, citing ambiguity in several retailers' return policies, objects to the practicality of the first option. (Doc.

19 at 6). She is silent on the second option. And she does not allege that she tried to exercise either option. Whether Switch retailers' return policies created an impediment to opting out of arbitration is irrelevant. She did not try to return the console, and she did not write Defendant to opt out of arbitration.

The Court finds no legal support that a contract with an arbitration agreement must contain an "opt out" provision to be valid under Alabama law. Plaintiff also cites no legal authority that supports inconsistent return policies would invalidate the arbitration agreement. Even if Plaintiff could not return her Switch for the full price, there was another option she could have selected if she did not want to arbitrate. Because the impediments to exercising the first option are merely hypothetical, and because Plaintiff did not write to Defendant to exercise the second option, Plaintiff's argument is irrelevant to the validity of the arbitration agreement.

**D. Inconsistencies with Arbitration Agreement**

Finally, Plaintiff argues that ambiguities in the arbitration clause render it unenforceable. (Doc. 19 at 18). Plaintiff points to two sections of the agreement that she posits conflict with each other: The first, Section 7(A), reads:

> If any court or arbitrator determines that the class-action waiver set forth in the preceding sentence is void or unenforceable for any reason or that an arbitration can proceed on a class basis, then the arbitration provision set forth in this Section 7 shall be deemed null and void in its entirety and the parties shall be deemed to have not agreed to arbitrate claims.

The second, Section 8, reads in relevant part:

> If any part of this Agreement is held to be invalid or unenforceable, that part will no longer apply to the parties but all other parts of the Agreement will remain in effect unless otherwise provided in this agreement.

Under Alabama "rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning." *Once Upon a Time, LLC v. Chapelle Prop., LLC*, 209 So. 3d 1094, 1097 (Ala. 2016) (citing *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000) (internal citations omitted)). The Court must choose a construction that will uphold the contract and all its terms. *Id*.

A plain reading of the language that Plaintiff contends is internally inconsistent shows that these clauses do not conflict with each other. Section 7(A) is a clause-specific severability clause, providing only that if the class-action waiver in the arbitration agreement is deemed invalid, then the arbitration agreement shall be deemed void. (Doc. 18 at 7). Section 8 is a general severability clause applicable to the whole EULA with an express exception to its force that renders it compatible with the Section 7(A). (*Id.* at 8.) Under Section 8, if a part of the agreement is held to be invalid, then all other parts of the agreement are to remain in effect "*unless otherwise provided* in [the] Agreement." (*Id.*). Thus, because Section 7(A) expressly "otherwise provide[s]," (*see* Section 8), for voidance of the whole clause under the

limited conditions described in that Section, there is no conflict between the local severability of Section 7(A) and the dictates of Section 8. Because there is no conflict between the two clauses, this argument fails.

In sum, there is clear and unmistakable evidence that Plaintiff agreed to the EULA, including the EULA's binding arbitration clause. Because there is no genuine dispute as to any material fact that Plaintiff accepted the EULA, the Court concludes as a matter of law that the arbitration agreement between the parties is valid and enforceable.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Dismiss (Doc. 17) is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion to compel arbitration is **GRANTED**; Defendant's motion to dismiss is **DENIED**.

This case is **STAYED** until the arbitration has been completed in accordance with the terms of the agreement.

The Clerk is directed to close this file for administrative and statistical purposes. *See, e.g.*, *Taylor v. Citibank U.S.A., N.A.*, 292 F. Supp. 2d 1333, 1346 (M.D. Ala. 2003) (closing file administratively after entering stay but advising parties of their right to request reinstatement). That action shall have no effect on the Court's retention of jurisdiction, and the file may be re-opened, on either party's

motion, for an appropriate purpose, such as dismissal following settlement, entry of judgment, vacatur, or modification of an arbitrator's award. *See* 9 U.S.C. § 9; *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 201-02 (2000).

The parties are **ORDERED** to notify the Court with the progress of the arbitration every 90 days from the entry of this order until the proceeding concludes.

**DONE** and **ORDERED** this June 30, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE